**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____ :
                                 :
UNITED STATES OF AMERICA         :
                                 :     Crim. No. 12-303 (NLH)
                                 :
     v.                          :
                                 :
ADAM LACERDA,                    :     OPINION
                                 :
            Defendant            :
_____ :
```

**APPEARANCES**:

BRANDON CREIGHTON SAMPLE
BRANDON SAMPLE PLC
1701 PENNSYLVANIA AVENUE NW
# 200
WASHINGTON, DC 20006-482

MARK E. CEDRONE
230 S. BROAD STREET
SUITE 1100
PHILADELPHIA, PA 19102

        *Counsel for Defendant*

R. DAVID WALK, JR
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
401 MARKET STREET
4TH FLOOR
P.O. BOX 2098
CAMDEN, NJ 08101

        *Counsel for the United States*

**Hillman**, District Judge

Before the Court are Adam Lacerda's ("Defendant") Motions for Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF 567, 583). For the reasons expressed below, Defendant's Motions will be denied.

**Background**

On September 5, 2013, a jury found Defendant guilty of conspiracy to commit mail fraud and wire fraud, mail fraud, and wire fraud in violation of 18 U.S.C. §§ 1349, 1341, and 1343. (ECF 429). Thereafter, the Court sentenced him to a term of incarceration of 324 months and a 3-year term of supervised release. (Id.) The Court also issued a money judgment in the amount of $11,922,908.38 and ordered forfeiture of $305,413.06. (ECF 462).

On June 4, 2020, Defendant filed a counseled motion for compassionate release under First Step Act 18 U.S.C. § 3582(c)(1)(A) based on COVID-19. (ECF 567). On June 29, 2020, the Government filed a letter in opposition to the counseled motion. (ECF 572). Defendant then filed a reply in further support of his motion on July 8, 2020. (ECF 577). Thereafter, on October 8, 2020, counsel for Defendant filed a letter asking the Court to defer ruling on the motion for 30 days so that he could submit further information. (ECF 580). Counsel for Defendant never such filed such letter.

On May 17, 2021, Defendant filed another pro se motion for compassionate release, noting that his counsel never filed a further letter on his behalf and further arguing why release was appropriate. (ECF 583).  On June 1, 2021, the Government filed a brief in opposition to Defendant's pro se motion.  (ECF 585).  On June 29, 2021, Defendant filed a reply brief in further support of his pro se motion.  (ECF 586).  The Court considers Defendant's Motion against this factual and procedural backdrop.

**Discussion**

**A. Legal Standard for Compassionate Release**

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'"  United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)).  Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals."  Id.  "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release."  United States v. Sellers, 2020 WL 1972862, at *1

(D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(C)(1)(A)); see also Raia, 954 F.3d at 595.

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) if after finding extraordinary and compelling reasons warrant a reduction, that such a reduction would be consistent with applicable policy statements issued by the Sentencing Commission and that the applicable sentencing factors under § 3553(a) warrant a reduction.  United States v. Pabon, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020).

B. **Analysis of Motions for Compassionate Release**

a. **Defendant has satisfied the exhaustion requirements**

April 5, 2020, Defendant applied to the warden for compassionate release and the warden denied his application on April 29, 2020.  (ECF 567 at 7).  The Government does not dispute that Defendant has exhausted his administrative remedies.  (ECF 572 at 8).  Thus, the Court deems the administrative exhaustion requirement for his motion to have been satisfied.

b. **Defendant fails to establish "extraordinary and compelling reasons" for his release**

Defendant cites to various medical conditions to argue that he presents "extraordinary and compelling reasons" justifying his release.  In his counseled motion, Defendant argues that his

4

medical conditions of pleurisy and active pneumonia constitute
"extraordinary and compelling reasons" justifying his release.[1]
(ECF 567 at 2). In his pro se motion, he adds that he has
developed the additional conditions of nodes on his lungs,
obesity, hyperlipidemia, hypertension and has a history as a
smoker. (ECF 583 at 2, 6). Defendant also argues that the
efforts by the BOP to stop the spread of COVID-19 have been
insufficient to safeguard the health of inmates, especially when
it comes to social distancing. (ECF 567 at 10-12). Defendant
argues in his pro se motion that the facility where he is housed
has not provided adequate medical care to him, specifically to
provide follow up care for his medical conditions. (ECF 583 at
2-3).

The Government contests Defendant's position. They
acknowledge that Defendant's obesity and hypertension are risk
factors associated with COVID-19 identified by the Centers for
Disease Control and Prevention (the "CDC"). (ECF 585 at 6).
However, they argue that the fact that Defendant declined to be
vaccinated against COVID-19 counsels against considering his
conditions as "extraordinary and compelling reasons" justifying
his release. (Id. at 7). Further, the Government highlights
that scientific data shows that the COVID-19 vaccines are highly

---

[1] He also states that he fell very ill in February 2020 with
pneumonia and sepsis. (ECF 567 at 5).

effective in preventing serious illness from the virus. (Id. at 7-9). They cite to cases from district courts around the country supporting a growing consensus that where an inmate is vaccinated, he or she does not meet the standard for compassionate release save for rare situations.[2] (Id. at 8). The Government also lists multiple doctor visits that Defendant has attended with prison medical personnel and from which he received care in order to rebut Defendant's contention that the BOP has been neglecting to provide him with medical care. (Id. at 4-5). The Government notes that Defendant has not shown that he still suffers from pneumonia or that his lung conditions are chronic and that he cannot care for himself. (ECF 572 at 1).

The Court certainly takes seriously Defendant's medical conditions. But Defendant has not sufficiently shown how his conditions are exacerbated by COVID-19. Raia, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.");

---

[2] In his pro se reply, Defendant contends that he was advised by his doctor on March 4, 2021 not to take the vaccine. (ECF 586 at 2). However, the medical records for that doctor's visit do not indicate that that advice was given. (ECF 583 at 59).

The applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines.  U.S.S.G. § 1B1.13, cmt. n.1(A).[3]  The Court cannot say that Defendant suffers from conditions that fall into the same categories as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling reasons."  Id.  It also cannot say that Defendant's condition substantially "diminishes the ability of [Defendant] to provide self-care within the environment of a correctional facility and from which he...is not expected to recover." Id.

---

[3] While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act.  That said, the Third Circuit has approved a district court's consideration of § 1B1.13 when it comes to evaluating motions for compassionate release filed by prisoners.  United States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021), cert. denied, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) ("The court correctly recognized that although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons.").  Even if the Court were to assume that a revised § 1B1.13 would expand the breadth of medical situations warranting release, the result here would not be different.  As set forth in more detail in this Opinion, the Defendant fails to demonstrate that his personal circumstances and jail conditions in light of the pandemic alone, or in tandem, represent extraordinary and compelling reasons warranting a sentence reduction and that the applicable sentencing factors under § 3553(a) similarly support such a reduction.

Though the Court accepts that Defendant's conditions could make his incarceration challenging, the Court does not find sufficient evidence in the record to show that he cannot care for himself.  While the CDC has identified hypertension, obesity, and smoker status as risk factors associated with COVID-19,[4] courts have held, and this Court finds similarly, that the mere fact that a defendant has a condition listed as a risk factor by the CDC is not enough, standing alone, to warrant compassionate release.  United States v. Hicks, No. 20-3512, 2021 WL 4316829, at *2 (3d Cir. Sept. 23, 2021) (affirming district court's holding that the defendant's asthma, hypertension, obesity and pre-diabetes did not present an "extraordinary and compelling reason" justifying release where it was managed by the BOP); United States v. Hoffman, No. 21-2452, 2022 WL 843484, at *1 (3d Cir. Mar. 22, 2022) (affirming district court's holding that the defendant's Type II diabetes and obesity did not present an "extraordinary and compelling reason" justifying release where the conditions were managed by the BOP); United States v. McCullum, No. 15-CR-491-LTS, 2021 WL 1550322, at *2 (S.D.N.Y. Apr. 20, 2021) (defendant's history of pleurisy and pneumonia did not justify compassionate release);

---

[4] CENTERS FOR DISEASE CONTROL AND PREVENTION, COVID-19, PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 15, 2022).

United States v. Caraballo, No. CR 14-0255, 2022 WL 60697, at \*6
n.5 (D.N.J. Jan. 6, 2022) ("Defendant's status as a former
cigarette smoker does not change the Court's conclusion that he
fails to show any extraordinary and compelling reasons for a
sentence reduction.").  There also is nothing in Defendant's
medical records that indicates that the node found in
Defendant's lung has any comorbidity with COVID-19.  (ECF 583 at
27).  In the absence of specific evidence personal to this
Defendant showing a more heightened risk, the Court declines to
find that Defendant has made a showing of such unique and
threatening medical conditions, even with the possibility of
contracting COVID-19, which warrant his release.

Most critically, Defendant's refusal to be vaccinated
undermines the claim that he is unable to care for himself in a
prison environment.  United States v. Estevez-Ulloa, No. 21-
2432, 2022 WL 1165771, at \*2 (3d Cir. Apr. 20, 2022) (the
district court's holding that the defendant's refusal to take
the vaccine belied his medical concerns was not an abuse of
discretion).  Moreover, FCI Danbury, where Defendant is housed,
has mitigation efforts aimed at controlling the spread of the
coronavirus that appear to be effective.  Currently, FCI Danbury
has no active inmate or staff positive tests.[5]  Over the course

---

[5] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19,
https://www.bop.gov/coronavirus/ (last visited June 15, 2022).

of the pandemic, one inmate has died as a result of infection by COVID-19, and 322 inmates have recovered from positive infections.[6]

In addition, according to the BOP, 927 inmates out of a population of 1,011 at FCI Danbury have been fully vaccinated.[7] Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court finds that the high vaccination rate inside FCI Danbury weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who currently seems to be managing his conditions effectively at FCI Danbury, does not present "extraordinary and compelling reasons" supporting his release.

### c. 3553(a) Factors weigh against Defendant's Favor

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction.  Here, they do not.

Defendant argues that his post sentencing conduct indicates that he "has taken great strides." (ECF 586 at 1).  He states

---

[6] Id.

[7] Id.; FEDERAL BUREAU OF PRISONS, FCI DANBURY, https://www.bop.gov/ locations/institutions/dan/ (last visited June 15, 2022).

that he has completed programming, committed himself to religious services, reinforced his ties with his family and friends, and maintains a model conduct record while incarcerated.  (Id.; ECF 567 at 5).

The Government argues that the § 3553(a) factors counsel against relief given that Defendant "hurt over 300 vulnerable victims, committed his crimes for many years, ran a criminal enterprise of at least 17 people trained by [Defendant] to lie, obstructed justice from indictment through jury verdict, and lacked any remorse for his criminal conduct."  (ECF 572 at 15). They underscore that Defendant has only served a few years of his 27-year sentence and that his release at this time would undermine the purpose of his sentence.  (Id. at 16).  The Government also notes more generally that Defendant has a high risk of recidivism and thus poses a danger to the public if released.[8]  (Id. at 15).

_____

[8] The Government also argued in its opposition to the counseled motion that the Court should deny the motion because Defendant's appeal of his conviction was pending before the Third Circuit at that time.  (ECF 572 at 9).  The Government was correct that Federal Rule of Criminal Procedure 37 would have allowed the Court to deny Defendant's motion on that basis during the pendency of the appeal.  United States v. Pawlowski, 967 F.3d 327, 329 n.4 (3d Cir. 2020) (Noting that Rule 37 allows a district court that receives a motion for compassionate release during the pendency of a defendant's appeal of conviction may deny the motion, defer ruling until after the appeal is resolved, or issue an indicative opinion).  The Rule also allows courts to defer rendering a decision until the appeal is resolved, which the Court has effectively done here.  Id.; (ECF

The Court sees no reason to disturb the sentence that it previously imposed.  Specifically, Defendant organized a extensive and complicated boiler room operation and trained others in order to systematically defraud innocent and often vulnerable victims.  18 U.S.C. § 3553(a)(1); (ECF 446 at 43:4-9).  Indeed, in imposing Defendant's sentence, the Court considered how Defendant seemed not to care about the emotional and financial damage that he caused his victims while he lived a lavish lifestyle and that he was unrepentant for his actions. 18 U.S.C. § 3553(a)(2)(A); (ECF 446 at 44:1-11, 77:18-20). Deterrence, both specific and general, also militates against release given the lucrative nature of the offense and the fact that Defendant continued his fraudulent scheme even after law enforcement initially approached him. Id. at § 3553(a)(2)(B); (ECF 79:22- 80:11).  Defendant's unwillingness or inability to see the harm that his criminal conduct caused suggests that recidivism is still an active concern in this case and underscores the need to protect the public from further crimes that he may commit.  Id. at § 3553(a)(2)(C); (ECF 446 at 79:3-7).  Finally, a further reduction of Defendant's sentence given the severity of the underlying conduct of the offense would

---

579 (order from the Third Circuit affirming the Court's judgment against Defendant)).

create an unwarranted sentencing disparity among similarly situated defendants.  Id. at § 3553(a)(6).

The advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated and that there has been a material difference in the § 3553(a) factors that animated his current overall sentence.  Thus, the Court declines to grant Defendant's Motions for compassionate release.

## Conclusion

For the reasons set forth above, Defendant's Motions for Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A) (ECF 567, 583) will be denied.  An accompanying Order will issue.


Dated: June 17, 2022            s/   Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

13